From Homer L. Kreider, Harrisburg, Pa.

## Incorporation of Laureldale Borough.

*William Abbott Witman, Jr.,* for petitioners.

*Joseph R. Dickinson,* for exceptants.

SCHAEFFER, P. J., Dec. 6, 1929.—We have before us the petition of certain residents of Muhlenberg Township in this county, praying that a certain area of that township be incorporated as a borough under the provisions of the General Borough Act of May 4, 1927, P. L. 519. We have also the remonstrance or protest by certain other residents of the district against the proposed incorporation. Several hearings have been held in court and much testimony taken.

The initial and controlling issue is whether the petition before us is an "application for incorporation . . . in writing . . . signed by a majority of

the freeholders residing within the limits of the proposed borough:" Section 202 of the Act of 1927, *supra*. This is a question both of fact and of law: Wernersville Borough, 5 Berks Co. L. J. 364.

In looking at the petition itself we find that, following the recitals of the document, there are three sheets of paper attached by staples thereto at the top of the page and containing signatures of ninety-seven persons; that then follows a plot or map of the district; that after that are eight sheets of paper folded in, but in no way actually attached to, the petition itself and containing 223 signatures; and that, finally, there are eleven pages, firmly bound to the petition by staples at the top of the page and containing 308 written names. The eight pages and the eleven pages show three perforations at the left-hand margin of the sheet, but the eight pages show no marks or perforations which would indicate that they had ever been physically attached to the petition before us. The only affidavit is that of Robert W. Hiester to the effect that he is one of the signers and that the number of freeholders resident in the district does not exceed 950, of whom 605 have signed the petition.

Upon the hearings the proponents offered testimony in explanation of this state of the record. They say, in substance, that three copies of the petition were prepared and circulated by groups, the second and third copies being carbon copies of the original; that the first ninety-seven signatures were obtained upon the original petition, that the 223 persons whose signatures appear upon the eight sheets of paper signed one copy, and the 308 persons whose names appear upon the final eleven sheets signed the other copy, and that at or about the time of filing in court the sheets of signatures were detached from the copies and attached to and filed with the original. The petitioners have also offered in evidence two copies of the petition which, according to some testimony, were the two copies circulated; but although they are obviously carbon copies of some original, they are equally obviously not carbon copies of the original before us, as they do not agree precisely with that in the setting of the words.

Under the circumstances thus disclosed, we cannot say that a majority of the resident freeholders have signed the petition before us. Various canvassers have testified that the copies circulated by them were copies of the original, but their testimony upon that point is too meager and insufficient to enable us to say as a matter of law that the persons solicited by them signed the application before the court when the same testimony established as a fact that such persons did not sign that petition.

Practically the same situation arose in Rockledge Borough's Annexation, 8 D. & C. 19. There signatures were obtained upon numerous petitions which were precisely alike and were returned to counsel after they had been signed. Counsel removed from each copy the attached sheets bearing the subscribed signatures and permanently fastened all of these to another copy of the petition which had not been circulated at all. But the late Judge Miller held that the document thus assembled could not be held to be signed at all, and cited Adams *v.* Woods, 19 Manitoba Rep. 285, to the effect that in order not to open the doors to fraud "the courts cannot be too careful to discourage the alteration or mutilation of documents." For the court to have to rely upon parol testimony to establish the identity and contents of the paper signed, in a case of this kind, would establish a dangerous precedent.

This is not a case of joining and filing as one multiple petitions without mutilation or other alteration.

76

We can, therefore, treat the petition before us as one signed by only ninety-seven persons. As it is admitted on both sides that the total number of free-holders resident in the district is in excess of 900, it is clear that the number of actual signers of the petition before us is much less than a majority of the resident freeholders.

There is no doubt in the mind of the court that the signatures upon the various sheets are genuine and that the persons in signing indicated a desire that a borough charter be granted. Nor is this a case of fraud, actual or constructive. Nothing has been alleged and sustained by any evidence what-soever which is indicative of bad faith or fraudulent purpose. We ground our refusal to grant the prayer of the petition solely upon the conclusion that the petition before us cannot be said to have been signed by more than ninety-seven freeholders and that admittedly that number is insufficient to give the court jurisdiction. In consequence of this conclusion, it is unnecessary to con-sider the expediency of the application or any other objection to the pro-ceeding.

And now, to wit, Dec. 6, 1929, the petition is dismissed.

From Charles K. Derr, Reading, Pa.